Ray E. Gallo (State Bar No. 158903)
Hilari H. Hanamaikai (State Bar No. 166483)
**Gallo & Associates**
5757 W. Century Blvd., 7th Floor
Los Angeles, CA 90045
Telephone: (310) 338-1114
Facsimile: (310) 338-1199

Attorneys for Defendant, Counterclaimant, and Counterdefendant,
THE COMPUTER MERCHANT, LTD.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SALESFORCE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE COMPUTER MERCHANT, LTD., a Massachusetts corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 07-CV-03556-WHA<br><br>**ANSWER TO COUNTERCLAIM OF DEFENDANT ASTADIA CONSULTING, LLC; DEMAND FOR JURY TRIAL** |

Cross-Defendant The Computer Merchant, a Massachusetts corporation ("TCM"), hereby responds to the Counterclaim of Astadia Consulting, LLC, ("Astadia") in this action (the "Counterclaim"), and admits, denies, and alleges as follows:

## DENIALS AND GENERAL ALLEGATIONS

1. TCM admits that this Court has jurisdiction of the original action predicated on 28 U.S.C. § 1332 in that all plaintiffs and all defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $150,000. TCM admits that the forum selection clause of the contract between TCM and Salesforce.com, Inc. ("Salesforce") provides as Plaintiff alleges, but denies that San Francisco or any other location in the Northern District is an appropriate forum. The contracts at issue (one between TCM and Salesforce and one between TCM and GrowthCircle, LLC), including the forum selection clause, were procured by fraud or other false statement by Astadia, and others, and are therefore void or voidable by TCM. The parties' agreements were made and entered into in Massachusetts as a result of Astadia's and Salesforce's sales activities in Massachusetts. Astadia knowingly, willfully, and fraudulently, materially misrepresented its ability, and the ability of Salesforce, to meet TCM's needs in a timely and effective way and at a cost acceptable to TCM. TCM is informed and believes that Astadia actively misrepresented and concealed its inability to meet TCM's needs by failing to disclose the true capabilities and limitations of Salesforce's software and the true customization that would be required to adapt it to TCM's needs. Astadia misrepresented both the benefits and the associated costs of Salesforce's product and Astadia's services to TCM in other ways subject to proof at trial. Salesforce's and Astadia's actions were intended to and did deceive TCM. Alternatively, Astadia made representations that it had no reasonable grounds for believing to be true. Alternatively, Astadia negligently misrepresented the facts as described above. TCM reasonably relied on Astadia's statements and omissions, and was deceived into signing the contract at issue to purchase the software and/or services at issue. All of these misrepresentations, omissions, and concealments render the venue clause in the would-be agreement between TCM and Salesforce involuntary and void or voidable by TCM. Salesforce filed this action in San Francisco only to achieve a venue advantage in the case, and after TCM had made clear to Salesforce that TCM expected a full refund

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

1  and would file suit to get it if necessary. TCM denies that San Francisco or any other location in the Northern District is an appropriate forum. TCM denies any remainder of Counterclaim ¶ 1.

2.  TCM is informed and believes that Astadia is the legal successor to GrowthCircle. TCM denies the validity and enforceability of the contract at issue, for the reasons set forth more fully in paragraph 1 above. TCM denies the remainder of Counterclaim ¶ 2 for the reasons set forth in paragraph 1.

3.  TCM is informed and believes that Astadia is the legal successor to GrowthCircle. TCM denies the validity and enforceability of the contract at issue, for the reasons set forth more fully in paragraph 1. TCM denies the remainder of Counterclaim ¶ 3 for the reasons set forth in paragraph 1.

4.  TCM admits that Astadia billed TCM for certain services, that TCM has declined to pay Astadia for some of the services for which Astadia billed, and that TCM has demanded that Astadia pay damages to TCM reflecting sums TCM already paid to Astadia and other sums. TCM denies the remaining allegations of Complaint ¶ 4.

5.  Answering Counterclaim ¶ 5, TCM incorporates paragraphs 1 through 4 above as though repeated here.

6.  TCM denies all the allegations of Counterclaim ¶ 6.

7.  Answering Counterclaim ¶ 7, TCM admits that it has refused to make further payments to Astadia and that TCM has demanded all its money back and more. TCM denies that it breached the parties' agreement. The agreement is void or voidable, and must be rescinded, based on Astadia's and Salesforce's fraud as described in paragraph 1 above. Further, were the agreement valid, Astadia breached the parties' agreement by failing to deliver what it promised, or to do so at the price promised, or at the associated-cost promised, or within the time promised. Accordingly, Astadia committed the first material breach of the agreement. Moreover, despite repeated demands from TCM that Astadia cure its defaults, Astadia failed to do so and, in fact, TCM is informed and believes Astadia simply cannot do so because the software/services provided by Salesforce and Astadia are not designed to provide the service that TCM needs and Salesforce and Astadia promised, and any customization that might allow them to perform the needed functions would not

allow them to perform the needed functions at the cost and failure risk, and within the timeframe promised. TCM denies all remaining allegations of Complaint ¶ 7.

8. TCM denies all the allegations of Counterclaim ¶ 8.

9. Answering Counterclaim ¶ 9, TCM incorporates paragraphs 1 through 8 above as though repeated here.

10. TCM denies all the allegations of Counterclaim ¶ 10.

11. Answering Counterclaim ¶ 11, TCM admits that it has refused to make further payments to Astadia and that TCM has demanded all its money back and more. TCM denies that it breached the parties' agreement and that the parties had any valid agreement. TCM denies all remaining of the allegations of Counterclaim ¶ 11.

12. Answering Counterclaim ¶ 12, TCM incorporates paragraphs 1 through 8 above as though repeated here.

13. TCM denies all the allegations of Counterclaim ¶ 13 (misnumbered as ¶ 10).

14. Answering Counterclaim ¶ 14 (misnumbered as ¶ 11), TCM admits that it has refused to make further payments to Astadia and that TCM has demanded all its money back. TCM denies that it breached the parties' agreement, or that the parties' had or have any valid agreement. TCM denies all remaining allegations of Counterclaim ¶ 14.

**ALLEGATIONS COMMON TO ALL AFFIRMATIVE DEFENSES**

15. Defendant, counter-claimant, and counter-defendant The Computer Merchant, Ltd. is a privately-held, Massachusetts-based staffing firm specializing in the placement of Information Technology consultants in temporary and permanent job assignments.

16. Defendant, Salesforce.com, Inc. ("Salesforce"), is a large, publicly-held software developer that markets and licenses a software application (the "Software") putatively designed to allow companies like TCM to, among other things: track consultants' availability and clients' job openings, match consultants to jobs based on their skills and location, and monitor the progress of the consultants' work.

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

17. Counterdefendant Astadia Consulting, LLC, is the successor-in-interest to GrowthCircle, LLC, and is a business that provides software installation, integration, and customization services.

18. In April 2006, Salesforce began aggressively marketing the Software to TCM as a suitable replacement for TCM's current system. In connection with their discussions, TCM furnished Salesforce with the source code for its system, as well as a detailed written list of its specific business requirements. TCM further allowed Salesforce to interview its employees concerning their daily tasks and needs and to observe those employees in performing their regular job functions.

19. After purportedly analyzing all of that information, Salesforce's principal sales engineer, Sal Caruso ("Caruso") advised TCM that the Software would enable TCM to perform its daily tasks far more effectively than TCM's current software and that, consistent with TCM's desires as communicated to Salesforce.com as Astadia, TCM would benefit from advanced built-in features of Salesforce.com's product including, but not limited to:

   a) the ability to search both consultant and client information using multiple keywords simultaneously, to enable TCM to, among other things, easily match consultants to assignments consistent with their technical skill sets;

   b) integration with internet-based map services, such as Google Maps, to allow TCM to place candidates in nearby assignments;

   c) a user interface that would allow TCM's employees to simultaneously view many pieces of related data, such as resumes and job descriptions;

   d) the ability to constantly monitor information and alert TCM's employees to important items, such as new client assignments, without any prompting by the user.

   e) ease of business process configuration, repurposing of standard Salesforce features and application extension utilizing AppExchange (on demand business applications), all without the need for software development.

   f) seamless integration of the Salesforce platform to TCM's other computer systems and software.

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

20. Mr. Caruso made these statements to, among others, TCM's president, John Danieli ("Danieli") and its Vice Presidents, Jay and Angela Powell (the "Powells"), during meetings held at TCM's site in Norwell, Massachusetts in early May, 2006. These statements were false when made and remain so today.

21. As part of this sales pitch, Salesforce even staged an elaborate demonstration of its Software at TCM's offices on or about May 5, 2006 during which it purported to demonstrate these features and others using information taken from TCM's databases. That demonstration was deliberately calculated and designed to mislead TCM as to the Software's capabilities as applied to TCM's business. The Software cannot perform for TCM the functions represented in paragraph 10 above and purportedly demonstrated on or about May 5, 2006 at TCM's offices without additional hardware, software, and/or expensive custom software programming.

22. In addition, Salesforce falsely advised TCM that its Software, configured to perform as described above, would be "hosted" off-site, i.e., that it would run on servers owned and operated by Salesforce. This offered two key benefits: (a) it would save TCM substantial amounts of money as it would not need to purchase, operate, or maintain new hardware; and (b) the risk of system disruption due to hardware failure would be reduced as there would be fewer pieces of equipment involved. But it proved to be false, at least as applied to TCM. All of the above-alleged misrepresentations by Salesforce were made with the specific intent to defraud TCM.

23. During the course of its efforts to fraudulently sell the Software to TCM, Salesforce introduced TCM to its so-called "premier" installation partner, GrowthCircle, LLC ("GrowthCircle"). TCM's principals met with GrowthCircle's Managing Partner, Matthew Bruce ("Bruce"), among others, during May and June, 2006 at TCM. During the course of those meetings, Bruce joined Salesforce in falsely advising TCM that the Software would be up and running in just three months, i.e., by Fall, 2006, as its basic design was already well-suited to TCM's needs and required only minor "configuration." Bruce also agreed with and reiterated Salesforce's "pitch" regarding the Software's functionality, as described above. Salesforce's Caruso was present at these meetings and in turn agreed with Bruce's representations, thus making Salesforce's fraudulent misrepresentations yet again. Bruce's statements were specifically intended to induce TCM's

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

reliance and to cause TCM to license Salesforce.com's software and to contract with GrowthCircle to implement that software at a substantial revenue and profit to GrowthCircle.

24.  TCM reasonably relied on Salesforce's and GrowthCircle's representations as to the functionality, suitability, cost, and ease of installation of the Software. As a result, TCM executed a "Master Subscription Agreement" ("MSA") with Salesforce, which provided for the purchase of 125 user licenses at a total cost of $738,556.25 over three years. A copy of the MSA is attached hereto as Exhibit "A." TCM even paid $288,133.01 up front for the first year of the three year subscription, although as described below TCM never received anything of value.

25.  At Salesforce's request and in reliance on the false representations set forth above, TCM also entered into a "Professional Services Agreement" ("PSA") with GrowthCircle, for the implementation of the Software. A copy of the PSA is attached hereto as Exhibit "B."

26.  Shortly after TCM signed the Professional Services Agreement, GrowthCircle merged with a Texas company called MW Advisors, LLC to form the resulting defendant company, Astadia. Astadia is the legal successor to GrowthCircle. It continued working under the PSA and, as successor-in-interest to GrowthCircle, assumed the PSA and all liabilities to TCM.

27.  Soon after Astadia began its implementation work in the fall of 2006 TCM discovered that Salesforce's and Astadia's express representations about the Software's features, suitability, integration, and ease of installation were false. Astadia struggled and ultimately failed to implement the Software, and was finally forced to admit and admitted that:

a)  the basic version of the Software would never be able to perform many of the tasks necessary to meet TCM's known requirements, including some which Salesforce had purported to demonstrate live to TCM, such as its resume or candidate search capabilities;

b)  the Software could not be installed in three months and — rather than merely "configuring" the system as promised — Astadia would have to develop extensive custom software code; and

c)  Salesforce's Software could not be used alone but required integration with other software in three separately hosted software components at additional and previously undisclosed expense to meet TCM's known requirements. To implement the Software,

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

1  TCM also would be forced to purchase third-party hardware at a cost of $86,807.31 and
2  assume projected operating costs of another $120,000 every year, costs that were not
3  disclosed by Salesforce and/or GrowthCircle before the contracts at issue were signed. On-
4  site hosting also would dramatically increase the risk of system failure due to many pieces of
5  hardware being cobbled together. It also would stunt processing speed resulting in a slower
6  software application and decreased productivity for TCM's sales people.

## AFFIRMATIVE DEFENSES

TCM repeats paragraphs 15 through 27 above and incorporates all of them into each affirmative defense asserted below, and on that basis claims a complete defense to each claim for relief asserted in the Counterclaim on each of the following grounds:

28. <u>Fraud in the Inducement</u>. Astadia, through its predecessor GrowthCircle, fraudulently induced TCM to enter into the PSA; it is therefore void or voidable, subject to rescission, and unenforceable.

29. <u>Mutual Mistake of Fact.</u> TCM believes Astadia knew that Salesforce's SFA software application could not and would not deliver the benefits Astadia promised to TCM, but nevertheless fraudulently induced TCM to buy it with false representations that it would provide those benefits. In the alternative, however, TCM alleges that Astadia actually believed what it said about Salesforce's software, just as TCM did. Accordingly, there was a mutual mistake of fact that defeated the formation of any agreement between Astadia and TCM.

30. <u>Failure of Consideration/First Material Breach.</u> The parties have no valid agreement because of Astadia's fraud. In the alternative, the parties' agreement required Astadia to deliver installation services that would, within the time and cost promised, provide the functionality, ease of use, cost, and risk profile that Astadia promised to TCM. Astadia failed to deliver these promised benefits and thus cannot enforce the agreement.

31. <u>Setoff.</u> Based on Astadia's above-described malfeasance, Astadia is liable to TCM under various legal theories, and TCM has been damaged and/or Astadia unjustly enriched in an amount subject to proof at trial. TCM is entitled to a setoff in this amount.

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

## PRAYER FOR RELIEF

Wherefore, Defendant TCM, as and to the extent supported by the applicable foregoing denies and affirmative defenses, prays that the Court:

1. Deny the relief sought in the Counterclaim and dismiss it with prejudice;

2. Award TCM its costs of suit; and

3. Order such other and further relief as the Court deems just and proper.

**GALLO & ASSOCIATES**

Dated: October 15, 2007        By: _____
Ray E. Gallo
Hilari H. Hanamaikai
Attorneys for Defendant,
Counterclaimant, and
Counterdefendant, THE COMPUTER
MERCHANT, LTD.

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114

## Demand for Jury Trial

Counter-Defendant The Computer Merchant, Ltd., hereby demands a jury trial of all issues so triable.

**GALLO & ASSOCIATES**

Dated: October 15, 2007        By: *[signature]*
Ray E. Gallo
Hilari H. Hanamaikai
Attorneys for Defendant,
Counterclaimant, and
Counterdefendant, THE COMPUTER MERCHANT, LTD.

Gallo & Associates
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
(310) 338-1114