# GROWTHCIRCLE

## Professional Services Agreement

This Professional Services Agreement ("Agreement") is between GrowthCircle LLC ("Consultant") and The Computer Merchant LTD. ("Customer"). Specific Professional Services to be provided to Customer, and Customer's payment obligations for same, shall be set forth in one or more Statements of Work hereunder.

### 1. Definitions

#### 1.1. "Professional Services"

Shall mean work performed by Consultant for Customer pursuant to a Statement of Work under this Agreement.

#### 1.2. "Statement of Work"

Shall mean Consultant's standard form for ordering Professional Services (entitled "Statement of Work"), which has been completed and executed by both parties, and which specifies the scope and schedule of Professional Services to be performed by Consultant for Customer and the applicable fees. Each Statement of Work hereunder shall be governed by the terms of this Agreement and shall reference the Effective Date specified below.

### 2. Ordering, Charges, Payment, Taxes

#### 2.1. Who May Order

Customer or a wholly owned subsidiary of Customer (each a "Customer Entity") may obtain Professional Services from Consultant under this Agreement in the United States. By signing a Statement of Work, a Customer Entity agrees that any Professional Services obtained pursuant to the Statement of Work are subject solely to the provisions of this Agreement and the Statement of Work. Customer represents and warrants that any Customer Entity who purchases Professional Services shall perform its obligations in accordance with the terms and conditions of this Agreement and the relevant Statement of Work.

#### 2.2. Fees for Professional Services

Unless otherwise expressly stated in the applicable Statement of Work, Professional Services shall be provided on a time and materials ("T&M") basis at Consultant's then current T&M rates at the time the Professional Services are performed. If a dollar amount is stated in the applicable Statement of Work for T&M Professional Services, that amount shall be deemed solely an estimate for Customer's budgeting and Consultant's resource scheduling purposes. In the event that the estimated amount is expended, Consultant will continue to provide Professional Services on a T&M basis under the terms of the applicable Statement of Work.

#### 2.3. Incidental Expenses

Customer shall reimburse Consultant for material(s) and reasonable travel, administrative, and out-of-pocket expenses incurred in conjunction with the Professional Services.

#### 2.4. Invoicing and Payment

Consultant shall invoice Customer monthly, unless otherwise expressly stated in the applicable Statement of Work. Charges shall be due and payable thirty (30) days from the date of the invoice and shall be deemed overdue if unpaid thereafter. Except for charges being disputed reasonably and in good faith, amounts remaining unpaid after the due date shall be subject to interest at 1.5% per month, or the highest rate allowed by law if lower, from the due date until the amounts are paid. Customer shall issue a purchase order, or alternative document acceptable to Consultant, on or before commencement of Professional Services under the applicable Statement of Work.

#### 2.5. Taxes

Charges for Professional Services hereunder do not include any federal, state, local or foreign taxes, duties or levies of any nature ("Taxes"). Any Taxes required to be paid by Consultant as a result of the Professional Services rendered hereunder (other than Taxes based on Consultant's income) shall be billed to and paid by Customer.

### 3. Contract Property

#### 3.1. Contract Property

Consultant hereby grants Customer a worldwide, perpetual, non-exclusive, non-transferable, royalty-free license to use for its internal business purposes anything developed by Consultant for Customer under this Agreement ("Contract Property"). Consultant shall retain all ownership rights to the Contract Property.

#### 3.2. Relationship to Online Service

# GROWTHCIRCLE

The Professional Services provided under this Agreement may be in support of Customer's license, under a separate agreement, to use Consultant's online CRM services. Such separate agreement shall govern all use by Customer of such online services. Neither this Agreement nor any Statement of Work hereunder grants Customer any license or rights to use such online services.

## 4. Term and Termination

### 4.1. Term

This Agreement shall commence on the Effective Date and shall remain in effect until terminated in accordance with this Section 4.

### 4.2. Termination for Convenience

Customer may terminate this Agreement and/or any Statement of Work hereunder at any time by providing Consultant with thirty (30) days prior written notice. Consultant may terminate this Agreement at any time by providing Customer with thirty (30) days prior written notice; provided, however, that any Statement of Work outstanding at the time of such a termination by Consultant shall continue to be governed by this Agreement as if it had not been terminated.

### 4.3. Termination for Material Breach

Either party may terminate this Agreement and/or any Statement of Work hereunder if the other party is in material breach of this Agreement or such Statement of Work and has not cured such breach within thirty (30) days of written notice specifying the breach. Consent to extend the cure period shall not be unreasonably withheld, so long as the breaching party has commenced cure during the thirty (30) day period and is pursuing such cure diligently and in good faith.

### 4.4. Failure to Make Payment

Notwithstanding anything in this Section 4 to the contrary, if Customer fails to make payment on any due date, Consultant shall have the right to immediately cease all Professional Services hereunder and, if such failure to make payment has not been cured within thirty (30) days of the due date, immediately upon written notice terminate this Agreement and any or all outstanding Statements of Work hereunder.

### 4.5. Termination for Insolvency

Either party may terminate this Agreement immediately upon written notice if the other party enters into insolvency or bankruptcy proceedings of any sort.

### 4.6. Effect of Termination

Termination of this Agreement and/or any Statement of Work hereunder shall not limit either party from pursuing any other remedies available to it, including injunctive relief, nor shall termination relieve Customer of its obligation to pay all charges and expenses accruing prior to such termination. The parties' rights and obligations under Sections 4, 5 and 6, shall survive termination of this Agreement and/or any Statement of Work hereunder.

## 5. Indemnity, Warranty, Remedy, Limitation of Liability

### 5.1. Indemnity

A. Each party ("Provider") shall defend and indemnify the other party ("Recipient") against any claim that any information, design, specification, instruction, software, data or material furnished by the Provider ("Material") and used by the Recipient in connection with the Professional Services infringes a copyright, patent or other intellectual property right of a third party, provided that: (a) Recipient notifies Provider in writing within thirty (30) days of the claim; (b) Provider has sole control of the defense and all related settlement negotiations; and (c) Recipient provides Provider with the assistance, information and authority reasonably necessary to perform the above. Reasonable out-of-pocket expenses incurred by Recipient in providing such assistance shall be reimbursed by Provider.

B. Provider shall have no liability for any claim of infringement resulting from: (a) Recipient's use of a superseded or altered release of some or all of the Material if infringement would have been avoided by the use of a subsequent or unaltered release of the Material which was provided to Recipient; or (b) any information, design, specification, instruction, software, data or material not furnished by Provider.

C. In the event that some or all of the Material is held or is reasonably believed by Provider to infringe the intellectual property rights of a third party, Provider shall have the option, at its expense, (a) to modify the Material to be non-infringing; (b) to obtain for Recipient a license to continue using the Material; or (c) to require return of the infringing or potentially infringing Material and all rights thereto from Recipient. If Provider is Consultant and such return materially affects Customer's ability to meet its obligations

# GROWTHCIRCLE

under the relevant Statement of Work, then Customer may, at its option and upon thirty (30) days prior written notice to Consultant, terminate such Statement of Work, in which case Customer shall be entitled to recover the fees paid for that portion of the Material. If Customer is the Provider and such return materially affects Consultant's ability to meet its obligations under the relevant Statement of Work, then Consultant may, at its option and upon thirty (30) days prior written notice to Customer, terminate such Statement of Work, in which case Customer shall pay Consultant for Professional Services rendered through the date of termination on a T&M or percent of completion basis as appropriate.

### 5.2. Warranty and Disclaimers

A. Consultant warrants that the Professional Services will be performed in a professional and workmanlike manner, in accordance with generally accepted industry standards.

B. Customer must report any deficiencies in the Professional Services to Consultant in writing within ninety (90) days of performance of such services in order to receive warranty remedies.

C. This warranty is exclusive and in lieu of all other warranties, whether express or implied, including any implied warranties of merchantability or fitness for a particular purpose.

### 5.3. Warranty Remedy

For any breach of the warranty in Section 5.2, Customer's exclusive remedy, and Consultant's entire liability, shall be the re-performance of the Professional Services. If Consultant is unable to re-perform the Professional Services as warranted, Customer shall be entitled to recover the fees paid to Consultant for the deficient Professional Services.

### 5.4. Limitation of Liability

In no event shall either party be liable for any indirect, incidental, special, consequential, reliance or cover damages, or damages for loss of profits, revenue, data or use, incurred by either party or any third party, whether in action in contract or tort, even if the other party or any other person has been advised of the possibility of such damages. Neither party's aggregate liability for damages hereunder shall exceed the total amount of fees paid and/or due by Customer under the applicable Statement of Work.

## 6. General

### 6.1. Cooperation

Customer acknowledges that the timely provision of, and Consultant's access to, office accommodations, facilities, equipment, assistance, cooperation, complete and accurate information and data from its officers, agents and employees, and suitably configured computer products are essential to satisfactory and timely performance of the Professional Services. Consultant will not be responsible for any delays due to changes to relevant requirement(s), project plan(s), schedule(s), scope, specification(s), design(s), software, hardware product(s), or related system environment(s) or architecture unless Customer and Consultant specifically consent to such changes in writing.

### 6.2. Confidentiality

"Confidential Information" shall mean all confidential or proprietary information disclosed orally or in writing by one party to the other that is identified as confidential or whose confidential nature is reasonably apparent. Confidential Information shall not include information which: (a) is or becomes a part of the public domain through no fault of the receiving party; (b) was in the receiving party's lawful possession prior to the disclosure; (c) is lawfully disclosed to the receiving party by a third party without restriction on disclosure or any breach of confidence; (d) is independently developed by the receiving party; or (e) is required to be disclosed by law. Each party agrees to hold the other's Confidential Information in confidence, and not to use or disclose such Confidential Information other than in connection with performance of obligations hereunder.

### 6.3. Changes to Scope

Any change(s) to the scope of work under a Statement of Work shall be made by written amendment to the Statement of Work signed by an authorized representative of each party prior to implementation of the change(s).

### 6.4. Relationship Between the Parties

Consultant is an independent contractor; nothing in this Agreement shall be construed to create a partnership, joint venture or agency relationship between the parties. Each party shall be solely responsible for payment of all compensation owed to its employees, as well as all employment-related taxes. Each party shall

# GROWTHCIRCLE

maintain appropriate worker's compensation and general liability insurance for its employees.

### 6.5. Governing Law

This Agreement shall be governed by the internal laws of the State of California.

### 6.6. Jurisdiction and Venue

Any legal action or proceeding relating to this Agreement shall be instituted in a state or federal court in San Francisco County, California. Consultant and Customer agree to submit to the jurisdiction of, and agree that venue is proper in, said courts.

### 6.7. Notice

All notices, including notices of address change, required to be sent hereunder, shall be in writing and shall be deemed to have been given when mailed by first class mail to the first address listed in the applicable Statement of Work (if to Customer) or to Consultant's address on the Statement of Work (if to Consultant).

### 6.8. Severability

In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

### 6.9. Waiver

The waiver by either party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach. Except for actions for nonpayment or breach of either party's intellectual property rights, no action, regardless of form, arising out of this Agreement may be brought by either party more than one (1) year after the cause of action has accrued.

### 6.10. Export Administration

Each party agrees to comply with all relevant export laws and regulations of the United States.

### 6.11. Entire Agreement

This Agreement constitutes the complete agreement between the parties and supersedes all previous and contemporaneous agreements, proposals or representations, written or oral, concerning the subject matter thereof. Neither this Agreement nor any Statement of Work hereunder may be modified or amended except in a writing signed by a duly authorized representative of each party. It is expressly agreed that any terms and conditions that may be attached to Customer's purchase order, whenever received by Consultant, shall be null and void and superseded in full by the terms of this Agreement and the applicable Statement of Work.

### 6.12. Subcontractors

Consultant may, in its absolute discretion, use third party contractors to perform any of its obligations under this Agreement.

### 6.13 Assignment.

Neither party may assign any of its rights or obligations hereunder, whether by operation of law or otherwise, without the prior express written consent of the other party. Notwithstanding the foregoing, either party may assign this Agreement together with all rights and obligations hereunder, without consent of the other party, in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets not involving a direct competitor of the other party. Any attempt by a party to assign its rights or obligations under this Agreement in breach of this section shall be void and of no effect. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the parties, their respective successors and permitted assigns

# GROWTHCIRCLE

**7. Signatures**

The Effective Date of this Agreement shall be _June 9, 2006_.

IN WITNESS WHEREOF, the parties have caused this Professional Services Agreement to be executed by their duly authorized representatives as identified below.

Customer: The Computer Merchant Ltd

| Authorizing Signature | *Angela M Powell* |
|---|---|
| Name | Angela M Powell |
| Address | 95 Longwater Circle, Norwell, MA 02061 |
| Title | VP/CFO |
| Date | 6/9/06 |

Consultant: GrowthCircle LLC

| Authorizing Signature | *[signature]* |
|---|---|
| Name | Lew Couture |
| Address | 8 Faneuil Hall Mkpl, Boston, MA |
| Title | Managing Partner |
| Date | 6/13/06 |

PROOF OF SERVICE

STATE OF CALIFORNIA )
)ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is 5757 West Century Boulevard, 7th Floor, Los Angeles, California 90045.

On August 14, 2007, I served the foregoing document described as **ANSWER TO COMPLAINT** on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Robert T. Sullwold
James A. Hughes
Sullwold & Hughes
235 Montgomery St., #730
San Francisco, CA 94104

_X_ By Mail: I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___ By Federal Express-Overnight: I caused such envelope to be deposited in a box or other facility regularly maintained by Federal Express in an envelope or package designated by Federal Express with delivery fees paid.

___ By Fax: I served a true copy of the document(s) described on all parties to this action by fax transmission, and the transmission was reported as complete and without error. Fax transmissions were sent and addressed as stated above.

___ By Personal Service: I caused such envelope to be delivered by hand to the offices of the addressees.

I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on August 14, 2007, at Los Angeles, California.

Jinx J. Clark